Filed 3/11/24  The Affordable Housing Coalition of San Diego County v. Drager CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE AFFORDABLE HOUSING COALITION OF SAN DIEGO COUNTY,<br><br>         Plaintiff and Appellant,<br><br>    v.<br><br>TRACY DRAGER, as Auditor-Controller, etc., et al.,<br><br>         Defendants and Respondents;<br><br>JOE STEPHENSHAW, as Director, etc., et al.,<br><br>         Real Parties in Interest and Respondents. | C097016<br><br>(Super. Ct. No. 34-2012-80001158-CU-WM-GDS) |

After more than nine years of litigation, plaintiff The Affordable Housing Coalition of San Diego County (Coalition) filed a motion for attorney's fees under Code of Civil Procedure section 1021.5 against certain respondents and real parties in interest. The trial court denied the motion, concluding the Coalition failed to establish prerequisites for an award of fees under the statute, such as that the litigation conferred a significant benefit on the general public.

1

The Coalition now contends (1) its lawsuit conferred significant benefits on the general public, (2) the lawsuit enforced important rights affecting the public interest, (3) the necessity and financial burden of prosecuting the action far outweighed Coalition's stake in the lawsuit, (4) attorney's fees should not be paid from the amounts recovered, and (5) the fee request was reasonable.

The trial court properly construed the significant benefit requirement and its determination on that point was not unreasonable. Accordingly, there is no need to address Coalition's other appellate arguments. We will affirm the trial court's order.

BACKGROUND

As explained in *The Affordable Housing Coalition of San Diego County v. Drager* (July 29, 2020, C083811) [nonpub. opn.] (rhg. den. & opn. mod. Aug. 25, 2020), in general, former redevelopment agencies were authorized to borrow from their Low and Moderate Income Housing Fund (Housing Fund) to make required payments to the Educational Revenue Augmentation Fund (ERAF) and the Supplemental Educational Revenue Augmentation Fund (SERAF) but the amounts borrowed had to be repaid. In addition, former redevelopment agencies were allowed to suspend all or part of their mandatory deposits into the Housing Fund for certain purposes, but the amounts suspended were a debt that also had to be repaid.

The Coalition filed a second amended petition for peremptory writ of mandate and complaint for declaratory relief against San Diego County, the Auditor and Controller of San Diego County, and 16 cities in San Diego County that were successor agencies to former redevelopment agencies. The petition alleged that loans and suspended deposits owed to the Housing Fund, and past, unmet affordable housing obligations, should have been, but were not, listed in Recognized Obligation Payment

2

Schedules (ROPS).[1]  The Coalition named as real parties in interest the Director of the Department of Finance (Finance), the State Controller, and various taxing entities in San Diego County that would share in any balance in the Redevelopment Property Tax Trust Fund.[2]

The Coalition sought a declaration that (1) certain affordable housing development and financial obligations were enforceable obligations under Health and Safety Code section 34171, subdivision (d)(1) and created implied statutory contracts;[3] (2) initial ROPS were deficient because they did not include past, unmet affordable housing obligations and loans and suspended deposits owed to the Housing Fund; and (3) ROPS that did not include past, unmet affordable housing obligations and loans and suspended deposits owed to the Housing Fund violated section 34171, subdivision (d)(1) and

---

[1] ROPS list the minimum payment amounts and due dates of payments required by enforceable obligations for each reporting period.  (Health & Saf. Code, § 34171, subd. (h).)  ROPS must be approved by the local oversight board and the Department of Finance.  (*Id.* at §§ 34171, subd. (m), 34177, subds. (*l*)(2)(B), (m)(1) & (o)(1).)  Former redevelopment agencies were required to adopt Enforceable Obligation Payment Schedules (EOPS) that listed all enforceable obligations and to provide a preliminary draft of their initial ROPS to their successor agencies in 2011.  (*Id.* at § 34169, subds. (g)(1), (h).)  In general, a successor agency can only pay those enforceable obligations listed in an adopted EOPS.  (*Id.* at § 34167, subd. (h).)  But in practice Finance did not require all enforceable obligations to be listed in the EOPS or initial ROPS.

[2] Tax increment revenues that would have gone to former redevelopment agencies are deposited in the Redevelopment Property Tax Trust Fund created by the county auditor-controller.  (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1037.)  Money in the Redevelopment Property Tax Trust Fund is used to pay, among other things, enforceable obligations, as defined in Health and Safety Code section 34171, subdivision (d).  (*County of Monterey v. Bosler* (2020) 57 Cal.App.5th 466, 473; *City of Cerritos*, at p. 1037.)  Any remaining money is distributed to local taxing entities.  (*County of Monterey*, at p. 473.)

[3] Undesignated statutory references are to the Health and Safety Code.

3

unconstitutionally impaired implied statutory contracts. The Coalition also sought a writ compelling successor agencies to (1) amend their initial ROPS to include all past, unmet affordable housing obligations and loans and suspended deposits owed to the Housing Fund and (2) submit approved, amended initial ROPS and supporting documents to the Coalition, the Auditor and Controller of San Diego County, and Finance. Further, the Coalition sought a writ compelling the Auditor and Controller of San Diego County to (1) amend its audits to include a determination of the amount and terms of all enforceable obligations listed in amended initial ROPS; (2) provide the Coalition, successor agencies, and the State Controller with the amended audits; and (3) allocate the Redevelopment Property Tax Trust Fund in a manner to allow successor agencies to meet their former redevelopment agency's past, unmet affordable housing obligations.

The trial court denied the Coalition's writ petition and complaint. On appeal, this court reversed the judgment as to money the former redevelopment agencies borrowed from the Housing Fund for payments benefitting schools and certain amounts suspended but owed to the Housing Fund, and remanded the matter to the trial court for further consideration of those issues, but otherwise affirmed the judgment.

On remand, the trial court found that no further action was necessary on its part other than to enter judgment and issue a writ of mandate. The trial court granted the second amended writ petition and complaint as to loans from the Housing Fund by former redevelopment agencies for payments benefitting schools and amounts suspended but owed to the Housing Fund under sections 33681.7, subdivision (e), 33681.9, subdivision (e), 33681.12, subdivision (e), 33685, subdivision (e), 33690, subdivision (e), 33690.5, subdivision (e), Stats. 1993, ch. 68, § 3 [former section 33681, subdivision (e)], Stats. 1994, ch. 281, § 1 [former section 33681.5, subdivision (e)], 33334.2, subdivision (k), 33334.6, subdivision (h) and 33487, subdivision (d) (hereafter loan and suspension obligations), as those loans and suspended deposits could constitute enforceable obligations under section 34171, subdivision (d)(1)(G). The trial court

4

denied the second amended writ petition and complaint as to all of the other claims. The Coalition did not appeal from the judgment.

The trial court issued a peremptory writ of mandate directing respondents to list outstanding loan and suspension obligations on their next ROPS. In addition, respondents were directed to each file a return within 90 days after issuance of the writ, setting forth whether they had any outstanding loan or suspension obligation and, if so, how they would comply with the writ.

Respondents Chula Vista, Escondido, La Mesa, Oceanside, San Marcos, Santee, Vista, and the Auditor and Controller of San Diego County, filed returns. Escondido, Oceanside, and Vista then filed amended returns.

The Coalition filed a motion seeking an award of attorney's fees under Code of Civil Procedure section 1021.5 in the amount of $2,316,926. The notice of motion was directed only to the Auditor and Controller of San Diego County, Finance, Chula Vista, Escondido, La Mesa, Oceanside, San Marcos, Santee, and Vista. The Coalition argued, among other things, that its lawsuit secured the return of millions of dollars to the Housing Fund, conferring a significant benefit on the general public and a large class of persons.

The trial court denied the Coalition's motion. Although the Coalition was the prevailing party, the trial court found it failed to establish that its litigation enforced an important right affecting the public interest and conferred a significant benefit on the general public and that private enforcement was necessary. Of relevance here, the trial court found that the writ returns showed that no respondent successor agency reported an outstanding loan or suspension obligation after the issuance of the writ and the writ did not change the reporting behavior of respondents and real parties in interest. The trial court concluded, based on actions taken in response to the writ, that the Coalition did not obtain a significant benefit for the public.

5

The Coalition appeals only from the post-judgment order denying its motion for attorney's fees. Any contentions regarding the correctness of the judgment, peremptory writ of mandate, writ returns and/or amended writ returns are not before us.

DISCUSSION

The Coalition contends its lawsuit conferred significant benefits on the public in that the lawsuit obtained monetary relief and enforced statutory rights. Respondents and real parties in interest Chula Vista, Escondido, Oceanside, San Marcos, Vista, La Mesa, Santee, Finance, and the Auditor and Controller of San Diego County, counter that the Coalition's action did not confer a significant benefit on the public because the lawsuit did not change the reporting practice of respondent successor agencies.

Code of Civil Procedure section 1021.5 is an exception to the general rule that parties in a civil action pay their own attorney's fees. (*Early v. Becerra* (2021) 60 Cal.App.5th 726, 735.) The statute " ' "is aimed at encouraging litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and it achieves this aim by compensating successful litigants with an award of attorney's fees [citations]." ' " (*Id.* at p. 736.) The party seeking an award of fees under the statute must establish that it is a successful party against one or more opposing parties in an action that "has resulted in the enforcement of an important right affecting the public interest;" "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons;" "the necessity and financial burden of private enforcement . . . are such as to make the award [of fees] appropriate[;]" and in the interest of justice, such fees should not be paid out of the recovery, if any. (Code Civ. Proc., § 1021.5; see *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381.) A trial court " ' "must realistically assess the litigation and determine from a practical perspective whether the statutory criteria have been met." ' " (*Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 544, superseded by statute on another point

6

as stated in *United Farm Workers of America. v. Dutra Farms* (2000) 83 Cal.App.4th 1146, 1163-1164; accord *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1158 (*La Mirada*); *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 895.)

We review the trial court's factual findings for substantial evidence.  (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 981.)  In addition, we review the entire record, paying particular attention to the trial court's stated reasons, and determine whether the trial court properly applied the statutory requirements.  (*La Mirada, supra*, 22 Cal.App.5th at p. 1156.)  If the trial court applied the proper legal standards, we determine whether there was a reasonable basis for its decision.  (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391 (*Robinson*).)

The requirement that the action conferred a significant benefit on the general public or a large class of persons requires a showing of some benefit (i.e., gain or contribution) that has resulted from the action.  (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 939-940 (*Woodland Hills*).)  "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. . . .  [H]owever, . . . the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation.  . . .  [R]ather[,] . . . in adjudicating a motion for attorney fees under [Code of Civil Procedure] section 1021.5, a trial court [should] determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case."  (*Ibid.*; accord *Burgess v. Coronado Unified School Dist.* (2020) 59 Cal.App.5th 1, 9.)

The trial court recited the standard for determining the significant benefit requirement set forth in *Woodland Hills, supra,* 23 Cal.3d 917, and ruled that the Coalition's lawsuit did not confer a significant benefit on the public because the writ

7

returns showed that respondent successor agencies had listed outstanding loan and suspension obligations in their ROPS before the issuance of the trial court's peremptory writ of mandate and the Coalition's action did not change the respondents' reporting. The trial court properly construed the significant benefit requirement and its determination was not unreasonable.

The Coalition nevertheless urges that its lawsuit ensured the recovery of tens of millions of dollars to the Housing Fund. However, the evidence before the trial court showed that years prior to this court's July 29, 2020 opinion, Finance took the same position this court did, i.e., that amounts borrowed from, or payments owed to, the Housing Fund were enforceable obligations provided that the agency's oversight board approved a repayment schedule, and Chula Vista, Escondido, La Mesa, Oceanside, San Marcos, and Vista had listed loan and suspension obligations in their EOPS and/or ROPS before 2020. Moreover, Chula Vista, Escondido, Santee, and Vista had fully satisfied their loan and suspension obligations before the trial court issued its peremptory writ of mandate. Santee had repaid its entire suspension obligation before the Coalition filed its writ petition. La Mesa and San Marcos had repaid substantial portions of their loan and suspension obligations and there was no evidence such payments were the result of the Coalition's lawsuit. An assessment of the Coalition's litigation does not necessarily show a gain to the general public. (*Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 365-366, 369 [concluding that the plaintiff's action did not confer a significant benefit where it did not result in any change by the defendant state agency].)

The Coalition disputes the accuracy of Oceanside's writ return and amended writ return, but it did not timely request a hearing in the trial court for its challenge to the writ returns. Although the Coalition asserts that the trial court did not allow it to set a hearing on its motion for supplemental returns, its citation to the record does not support the factual assertion.

8

The Coalition also contends the general public benefited from its lawsuit because the lawsuit ensured that public officials entrusted with money for affordable housing would spend the money for that purpose. But the prayer for relief in the second amended writ petition and complaint did not seek a declaration about how any funds would be spent and neither this court's July 29, 2020 opinion nor the trial court's peremptory writ of mandate decided how any funds should be spent.

Inasmuch as a significant benefit to the general public or a large class of persons is required for a Code of Civil Procedure section 1021.5 fee award and it was not unreasonable to conclude that the Coalition did not make the required showing, we need not consider the parties' other arguments, including those pertaining to the catalyst theory. (*Robinson, supra*, 202 Cal.App.4th at p. 391; see *City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 697-698 [" 'each element must be satisfied to justify a fee award' "].)

## DISPOSITION

The order denying the Coalition's motion for attorney's fees is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


/S/
MAURO, Acting P. J.


We concur:


/S/
DUARTE, J.


/S/
MESIWALA, J.

9